Good morning. Richard Rome appearing on behalf of the defendant. In this case the defendant is convicted of one count of being a felon in possession of a firearm. Went to a jury trial and he was found guilty. The first issue I would like to raise was a procedural issue when the trial judge terminated the lawyer's opening statement right in the middle. And the effect of this obviously was to prejudice the defendant and to make the defendant's lawyer look like she didn't know what she was doing. And obviously that reflects grievously on a defendant. Well, admittedly that not being the most desirable, I think all judges hope that never has to happen. But how do you balance in terms of it seems to me that there were some warnings, there were some attempts to control counsel and counsel kept violating the court's orders here. What do you, you know, what do you do about that? And given the fact that opening statements aren't evidence in the case, they're just an opportunity to address the court. Well, it's true there was a couple of warnings. I don't think the lawyer violated, I mean, the judge thought there was a violation. I don't think the lawyer did anything wrong. The lawyer basically got up, stated what the evidence was going to be, and went in and was talking about the facts of the case. Specifically, for example, that the defendant wanted to get out of the group, the motorcycle group, which was a very violent group, that he had no choice, that he had to play a role and he was play-acting. And at that point, the court jumps in and says, you're arguing the merits. Gives the lawyer another chance. And the defendant's, the lawyer specifically states that the defendant was forced to take a gun, that the motorcycle group was a dangerous, violent group, one of the most violent, if not the most violent groups in the country. That the undercover agent who was involved knew this, that the group was a national organization and had chapters all over the country, that each chapter had offices and officers in a various structure, and that the group was involved in criminal activity, was secret and a very tight-knit group. What evidence, what evidence did the defendant want to produce, which the court did not allow to be produced, which would have shed light on this particular issue? Well, I don't think that you mean what evidence was excluded? Right. By virtue? Right. I don't think that there was any evidence that was excluded. But isn't that the point? Your client had the burden, right? Had the burden because it was addressed. Other than the, is it the same gun? We'll leave that aside for the moment. I mean, is it the same gun? Anyway, the testimony that he took a gun, that was unimpeached, right? Uncontradicted. That's correct. Okay. So yes, he's an ex-con. That's known. That's not argued, right? He had a gun. That's not argued. Whether he had the same gun or not, that's an argument. So he had two of the elements. He had the elements of the offense basically acknowledged, save and except for the circumstances surrounding his possession of the weapon. To that, he had the duty of going forward and saying, look, I acted under duress. So then the question is, okay, you say the judge acted improperly. What did the judge exclude that would have been probative of that particular issue? Because maybe you can argue one thing or another thing. The judge didn't do everything right. He was a little intolerant, short-tempered. Who knows? We're all of those. We all have these problems. The question really is, on any given day, the question really is, looking at the case, looking at the case, what evidence did your client want to produce which the judge said, no, I'm not going to allow that? I don't know that there was evidence, but what the judge precluded was the right to make an opening statement and to be able to stand up, not be embarrassed by the court, not be humiliated, told to sit down later on after a, after a Maybe the lawyer has a grievance against the judge. Maybe the lawyer was embarrassed. I understand that. But lawyers are embarrassed all the time. The question really is whether or not it deprived the defendant of a fair trial. And in looking at that issue, I'm particularly interested to see what evidence was excluded. And I think I responded that I don't believe there was any particular evidence other than the court showing a bias to the defendant and his lawyer. Later on, after the third time, the lawyer is finally cut off, the judge in the sidebar or out of the presence of the jury in any event, is accused of perpetrating a fraud on the court. The judge says you made a fraudulent statement. You're manipulating the court. You don't know the function of an opening statement. You don't intend to prove the facts. So if there's not a preconceived notion right there, so other than particular evidence not being excluded. Isn't it just as likely that the jury would have felt sorry for the lawyer and given the defendant the benefit of the doubt if they felt that they were being bullied unfairly or not given a chance to finish their statement? I don't know if we can make that determination. I think the jury may very well just take a cue from the judge and figure this lawyer doesn't know what she's doing and therefore it's reflective on the defendant. And I think that's the problem. But I don't think there was any specific evidence that was excluded as you were requesting. But I think the fact that it shows some impartiality. It was cut off at the third time, right? That's correct. At the third time. How much argument actually was there before that happened? How long did it actually go? Well, it's hard to generate. It's hard to, you know, in the entire time? Before the counselor got the hook and was pulled off. There wasn't a lot. Between the second and the third time. But from the start till when? I mean, it covers a few pages in the transcript. I don't know that I can quantify it into minutes. The counsel was able to set forth the basic theory that he did everything he could not to possess the gun. These were big, scary people, very organized, very vicious, very secretive, very paranoid, how he was trying to protect himself and so on. All of that got said. In other words, at least the bare bones of the theory was presented before the lawyer was told to sit down. That is true. I think, though, that by terminating the statement, what the impact is that the jury is most likely going to feel and disregard the prior information if they think that the statement was a fraud or there was some manipulation going on here. And I think that, you know, it's a very devastating type of thing to happen in front of a jury like that. The judge said this is a fraud? In front of a jury? Not in front of a jury. Well, but that's your point, isn't it? But I think the jury could pick up from what happened before that obviously the judge was very displeased, told the lawyer to sit down, that her statement was over and obviously is going to pick up, you know, signals from the court. And so on that basis, I think we appreciate if this court would closely look and see if there wasn't a violation of just a fundamental fairness to the defendant. I'd also like to move on to the second argument that's contained in my brief, which was the exclusion of evidence relating to the defense of duress. In essence, the defendant's position was that he possessed this gun, but under the circumstances and in the presence of a violent motorcycle group that he had to do this. And as part of his defense, he wanted to put on three other witnesses that would have testified that he told them that. Earlier on in time, a few years earlier. And the court excluded all of that testimony. There was two ex-girlfriends and a daughter. And basically that it should have been admitted as an exception, excuse me, to the hearsay rule as a prior consistent statement. And the court basically disallowed it. And it should have been admitted. And it was very, very confusing. Assuming that you're correct about that, assuming that the foundation was laid when the prosecutor asked, you know, wouldn't you do just about anything to stay out of prison again? And he said, no, I'm not here to lie. I mean, that there was at least implicitly a charge of recent fabrication. Yes. What difference could it have made, again, on the prejudice part of the analysis for us? Assume that the girlfriends have been able to testify, the girlfriends. What is your view of how that would have affected the trial? Well, I think it would have been very important. And I think, first of all, it would have in essence bolstered, but not just bolstered, it would have verified what the defendant had stated. And without that, it's really out in the open. It's just kind of hanging out there. And it would have rehabilitated the fact that there was this motive to lie. And that was the basis that the court excluded that testimony. That there was this, that it wasn't shown that there was a motive to either fabricate or lie. And that would have rebutted that. And that becomes very crucial on the whole defense. If his defense was that I was forced to do this, and the government then undercuts his testimony, which I think it did extensively, I laid it out in my reply brief on the cross-examination, that he had a motive to lie in a recent fabrication, that testimony would have really tipped the balance. Otherwise... His duress was that he was afraid of the gang. Yes. And afraid to leave, so he just had to do what they said. That's correct. Or there would be, these were bad people, and there would be things that would occur. And so these other two statements would have said that he's told people before that he wanted to get out, but he was afraid? Yes. That's basically, the other statements were that he told, that's exactly what those statements were. And there were three witnesses in court. They took the witness stand one, two of them were cut off. The third one, they didn't get into it, but it was one of his children, and that was who he said that he had told that to before. So that was a, that would have been a witness that could have verified his story. And it really came down to that, I think that one prong of the rule of Federal Rule of Evidence, the 801D rule, which was the prior consistent statements. And I think it was extremely prejudicial. Otherwise, you have the defense basically as the defendant testifying to a certain story, then he gets impeached. And that's it. He's not allowed to- When did he make the statements to his sister and his- It was in the early part of, it had been a couple of years prior. Prior to what? It was prior, actually it was prior to the indictment being filed. Prior to the indictment, but subsequent to the incident? It was actually, it was prior to the incident. Prior to the- No, it was subsequent to the incident. Wait, wait, let me double check the date. It was- Well, it doesn't make a difference whether it's a, whether it's- I believe it was prior, no, it was prior to the actual incident that formed the basis for this case. Because it went on for a long time, right? I mean, first there's the showing of the gun. It starts in 93, I guess. Well, which incident are we referring to, Your Honor? I'm sorry. Okay, there's the Memorial Day celebration, and that's in 93. That's in 90, no, that's in 98. That's in 98. Yeah, he's- Okay. The date of the incident is May of 98. Okay. And then when, well, he has, there's two parts. He's got, he's dealing with his queen, and then there's another agent that he deals with where he supposedly confesses, or- There was a statement given to another agent, that's correct. And how are, what are the, where is that relative to the Memorial Day incident? The statement was given in the year 2000, I believe, which would have been substantially after the Memorial Day incident. Now, was that before or after he was arrested? I believe, I don't know that I know the arrest date. I don't know if I can answer that question. Okay. I don't know that that came out as to the exact date of the arrest. And these statements were before the 98? Yes, that he wanted to get out of the group, and that's why there was no motive to lie, which gets around the one prong that apparently the court was hung up on, on the prior consistent statement, that there was no motive to fabricate this. You know, I'm running out of time, so maybe I'll just save my 17 seconds. On the rest of the arguments, I would submit it, unless the Court wants to hear anything further on that. If there's any extra time, I'd be glad to answer any questions. Thank you. We'll hear from the government now. Thank you. May it please the Court, Your Honor. Could you just set the record straight? When was the, tell us when the alleged statements were made. Tell us when the incident occurred, May of 98, right? That's correct, Your Honor. And when was the indictment and so forth? So give us the chronology, because I'm confused. A warrant was issued for this defendant's arrest at the time of the takedown of this group of the Mongols. This was in approximately 1999. These statements that he was trying to offer through the defense witnesses were made while he was in prison and approaching when he got out of prison the last time before this incident, which was April of 1998. He left prison in April of 1998, and the statements were alleged to have been made when these witnesses were visiting him in prison. So it was pre-incident. Yes, that's correct. And it has Memorial Day of 1998 where the gun is allegedly there. That's correct. May 23, 1998 was when the gun was the charge in the indictment. Okay. So what is your view, given that scenario, what is your view as to whether or not it was appropriate to exclude it? Is the prior statement consistent with his testimony on the stand, namely, that he's afraid of the group or he can't leave the group or whatever that statement was? Well, first of all, Your Honor, I am not so sure that there was an express or implied charge against the defendant that these statements had been fabricated. There certainly was an effort by the government to prove that the defendant had not indeed changed his life and had not made that decision to reject violence and reject the Mongols, but the government did not specifically question him about those statements that he made to the three individuals. They certainly implicitly, I'm sorry. Well, I'm seeing, I'm not seeing how that, how you can attack credibility so narrowly. I mean, if his whole defense is duress, then if, I mean, obviously he's, it would support his theory of duress if he had told people before that he was afraid, that he wanted to get out, that he was afraid. And so what was your attack on his credibility? What were you attacking if you weren't saying, well, you're not afraid, you still belong to the Mongols? Yes, we were attacking that, Your Honor. We were just not specifically attacking the fact that he had said, I told my ex-girlfriend this, or I told my daughter this. He may very well have told his daughter that. Well, of course you can't attack that because you're fighting to keep that statement out. So that's what you're keeping out. That's what the judge kept out, isn't it? So you're not attacking whether the statement was made. The issue is whether or not he, the defendant, would have been permitted to say, look, four years before this gun thing happened, I told people I was trapped, I couldn't get out of this outfit, and that's part of my duress defense. That's what he's saying. So it's before the motivation to lie. The motivation to lie, arguably, attaches when he's arrested on the warrant, or learns about it. He says, oh, I have to have a story. My story is going to be they forced it. That's the motivation to lie. So the question is, and he gets on the stand and he says, hey, you know, I was trapped. I had to do it. And the government gets up and says, oh, you know, no. Or they basically attempt to impeach him. If he were believed, by the way. Put it another way. If the defendant were believed, wouldn't he have been acquitted? Well, getting to that point, Your Honor, even assuming that the district court did abuse its discretion in this case. Excuse me, that actually doesn't respond to Judge Breyer's question. He asked you if the defendant had been believed completely by the jury, would he have been acquitted? Not necessarily. The defendant wanted to set up the situation of his mindset and why he was susceptible to an immediate threat. However, the other elements, whether or not the jury would have found the other elements had been proved or not, is questionable. The jury did not hear much evidence of an immediate threat of death or bodily injury at the moment that the defendant possessed the gun. And the defendant had to have a well-founded fear that that threat would be carried out. But the defense of duress, if you can prove it, entitles you to an acquittal. That's correct. Okay. I think that was what the question is. But I think it's important to focus on that contrary to what the defendant asserts, the exclusion of that testimony did not prevent him from putting on that defense through the defendant himself and through other witnesses. The defense in this case put on a vigorous duress defense. And when it put on a vigorous cross-examination of the government's agents, of Special Agent Queen and Special Agent Ciccone, he questioned Special Agent Queen about retaliation, about the dangerous nature of this group, about if somebody did want to leave the group, what would be the ramifications of that? He also established that there was a green light out on defendant. And Agent Ciccone confirmed this in his testimony, that there was a green light issued against defendant because he, for whatever reason, had gotten into an argument with the national president of the Mongols. And then, in addition to that, the defendant put on a vigorous direct case. The defendant recalled Special Agent Queen as his own witness, and at that time was given ample opportunity to ask Agent Queen about every aspect that he was not allowed to ask him about on cross-examination because it was beyond his control. But it does show that he didn't recently fabricate the fear. I mean, if he said to people before the Memorial Day incident. You know, I mean, a lot of people, you know, there's always the argument that people suddenly, you know, see the light after they've been arrested.  Well, the fear has to be at that moment. That's he was attempting to create a mindset for why he would have been susceptible to that fear. So your argument is basically that that evidence which was excluded, even if improperly excluded, was harmless. That's correct, Your Honor. Because it doesn't go to, there was sufficient evidence that existed which showed that his claims of the well-founded fear were bogus. That's correct, Your Honor. Because it didn't show the immediacy and so forth. He failed to meet those crimes. So it's harmless errors. That's correct, Your Honor. On the opening statement, it seems that the judge was a little harsh here. I mean, I think most of us never would have been able to make an opening statement if, you know, I'm not sure what, if the attorney had said something like, the evidence will prove and then go into the theories. Is that what the judge wanted? You know, because he just sort of told the story. Well, just to get back to the Court's question, to put the opening statement in context, the government presented an opening statement that took approximately three transcript pages in this case. All told, the defense was also permitted to make an opening statement that was approximately three transcript pages. Oh, but that's very unfair. I mean, the defendant essentially conceded the prima facie elements of the offense, by and large. All the government has to show is, hey, he's an ex-con. Ah, on this day he had a gun. By the way, this is the gun. Then they sit down. I mean, that is three pages. Right? Now the defense has to say, wait, there's a story here. Let me tell you what the story is. There's a side to it. There's a defense to it. And it's one based upon duress. That's not generally a simple one-page, two-page, three-page statement. Now, tell us, what did the defense counsel do that was wrong in her opening statement? Well, the defense counsel started out by stating what the defense was. She was able to get out what the defense was repeatedly throughout her opening statement, even with the interruptions of the judge. She started out by saying, no way out. Even though Mr. Kramer wanted to get out, at that moment he had no choice but to take that gun and walk. Well, if she had said the evidence will show that he had no way out, the evidence will show that even though Mr. Kramer wanted to get out, at the moment Mr. Kramer had no choice but to take that gun and walk, that would have been okay? I mean, it seems like it's sort of a fine line here. Yes, it is a little argumentative, and it's a little more interesting, and all of those of us that have to sit through long trials like to have that interesting. But I guess I don't see that it's that different than what I've seen people do for 20 years, what I did, what I've seen other people do. Now, whether it made any difference or not, that may be a different situation. But, you know, it's not like he was talking about, or she, was it? She. It's not like she was talking about evidence that the court had said I'm not going to let in, and things like that. Well, just to, I understand what Your Honor is saying. Just to address your question about what was it that so offended the district judge, when she began arguing about the dangerous and violent nature of the organization. But isn't that, wouldn't she have to establish that in order to give credibility to the defense of duress? It's not exactly what she has to show? But those were the points on which she did not say what evidence she was going to present of that. She just began saying it's a very dangerous organization. So she should have said, as Judge Callahan suggested, The evidence will show it's a very dangerous organization. So the fact that she said it's a very dangerous organization without saying the evidence will show, which is so boring, but that's her fault. Well, she did, after the judge warned her. Is this not a dangerous organization? It is a dangerous organization, and the defense was able to. Well, see, there wasn't even anything in there that wasn't true. Well, the defense was able to elicit that in fact, and this is why. And the agent testified to that, right? That's why the agent had to go undercover. That's correct. Because it was dangerous. That's correct. I mean, you couldn't just get in this, you know, club by showing your police ID, right? Well, the defense counsel, in fact, despite the judge's interruptions, emphasized that this was a violent and dangerous organization over and over again. And, in fact, I believe that is when the district court at the end had had it at that point, because she repeated this over and over. So it makes it all the more bizarre that she was cut off, doesn't it? No, because she never offered any piece of evidence or any facts that she would elicit during the trial that would then, from which she could then argue that this organization was deadly and dangerous. Now, let's say that we find that the judge acted improperly. Sometimes it's the judges acting properly. Acted improperly, very rare. Acted improperly. Acted improperly in cutting off her argument. Are you going to say that that's harmless there? Yes, Your Honor. And tell us why. First of all, the court gave a curative instruction. At the end, he turned and told the jury that his admonitions to counsel had nothing to do with this case. It had to do with procedure. So arguably, any abuse of discretion was cured by the instruction given to the jury. That's sort of like after the floor opens and you drop down into the floor, never mind its procedure, and then you get to get back up to counsel table. Well, the other point that should be made is that a lot of the comments made to the defense counsel that are argued in the appellant's brief were made outside the presence of the jury. The only thing the court said in front of the jury was, you need to present to the jury the facts that you will elicit at trial. But to get back to the question of why this error was harmless, the defense got to fully establish everything that she said she would have been prevented from saying in her opening statement throughout the trial. She established it by calling her own witnesses. She established it on cross-examination. And she was given a full opportunity to argue in closing everything that she wanted the jury to hear without interruption by the court. She went on for six or seven pages in her closing argument without any interruption. So in this case, just because the jury may or may not have been denied a preview of the evidence does not mean that they were not allowed to fully hear and digest the evidence throughout the rest of the trial and then hear the closing argument, which was something that the district court felt that the defense counsel was attempting to do through opening statement. And that is why in this case there were any error on the part of the district court was harmless and also viewed in light of the entire record and the strength of the evidence of the defendant's guilt in this case. Denying the defense counsel the opportunity to make a full opening statement is harmless error. And I would like to address just a couple of the other alleged abuses of discretion by the district court. The district court is alleged to have abused its discretion by cutting off the cross-examination of Special Agent Queen because it felt that the areas the defense counsel were delving into were not areas that had been covered on direct examination. And the court repeatedly emphasized that if you want to cover these three areas, which were the criteria for joining the group, the distrustful nature of the organization and the extent to which federal agents had infiltrated the Mongols, he gave the defense counsel ample opportunity and, in fact, encouraged her to call Special Agent Queen as her own witness. And, in fact, the defendant did and was able to, with only minor interruptions by the court, present direct evidence of all three of those areas. Similarly, the question that was posed to Special Agent Ciccone, whether he felt that it made sense for the defendant to have engaged in a fight with the national president of the organization, that was a perfectly valid objection that was sustained. It was argued – first of all, the question was an argument. And second of all, it wasn't eliciting facts from the witness. It was eliciting an opinion. Counsel, you have exceeded your time. Thank you, Your Honor. Thank you. The government was allowed to go over time a bit. Would you care to take a minute for rebuttal? Just briefly, the only thing that I would add, Your Honor, is with respect to an argument that I didn't get to make, I don't know if I can open up a new can of worms. No. Maybe not. Rebuttal is rebuttal. You may cover anything that's been covered so far. The only thing that I would say, then, is with respect to whether the error is harmless or not, I think if you take the accumulation of these things between the opening statement, the failure to allow in three defense witnesses, it's one thing to cross-examine a government witness and try to pull the information out. It's another thing to put on your own case and your own witnesses and put them on. And I think if you combine those with the – and I won't argue it – but with the evidentiary error that was made that I've covered fully in the third argument, if the Court could take a particular look at that, where there were prior acts of bad conduct and character conduct that came in to impeach the defendant on cross-examination and on one rebuttal witness, and either that separately, that was extremely damaging evidence when he was asked about uncharged defenses. You're straying into other areas now, Counsel. Cumulatively, at the very least, there should be a reversal on the case. Thank you. Thank you, Your Honor. We appreciate the arguments of both sides. The case just argued is submitted, and we'll come to the last case on the morning calendar, which is Convicts v. Midland-Wallowand Capital, Inc. for a bit of change of pace. All right.
judges: Graber, Callahan, Breyer